# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

CHRISTOPHER K. KAMON

No. 23 CR 54-2

Judge Mary M. Rowland

## GOVERNMENT'S SENTENCING MEMORANDUM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

BACKGROUND ......................................................................................... 5

The Advisory Guidelines Range ................................................................... 9

The Factors Set Forth in 18 USC §3553(a) ................................................ 20

CONCLUSION ........................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Gall v. United States* 552 U.S. 38 (2007) .................................................................. 21

*United States v. Arroyo* 75 F. 4th 705 (7th Cir. 2023) .............................................. 24

*United States v. Brown* 880 F.3d 399 (7th Cir. 2018) ............................................... 24

*United States v. Cavera* 550 F.3d 180 (2d Cir. 2008) ............................................... 24

*United States v. Green* 114 F.3d 613 (7th Cir. 1997) ................................................ 19

*United States v. Heffernan* 43 F.3d 1144 (7th Cir. 1994) ......................................... 24

*United States v. Hernandez* 325 F.3d 811 (7th Cir. 2003) ........................................ 11

*United States v. Jarrett* 133 F.3d 519 (7th Cir. 1998) .............................................. 19

*United States v. Johns* 686 F.3d 438 (7th Cir. 2012) ................................................ 13

*United States v. Julian* 427 F.3d 471 (7th Cir. 2005) ............................................... 12

*United States v. Lopez* 545 F.3d 515 (7th Cir. 2008) ................................................ 18

*United States v. Parolin* 239 F.3d 922 (7th Cir. 2001) ............................................. 13

*United States v. Rumsavich* 313 F.3d 407 (7th Cir. 2002) ........................................ 13

*United States v. Senn* 129 F.3d 886 (7th Cir. 1997) .................................................. 12

*United States v. Sims* 329 F.3d 937 (7th Cir. 2003) .................................................. 12

*United States v. Thompson* 777 F.3d 368 (7th Cir. 2015) ......................................... 25

*United States v. Wang* 707 F.3d 911 (7th Cir. 2013) ................................................ 18

*United States v. Watts* 535 F.3d 650 (7th Cir. 2008) ................................................ 18

*United States v. White* 737 F.3d 1121 (7th Cir. 2013) .............................................. 12

**Statutes**

18 U.S.C. § 1343 ................................................................................. 5

18 U.S.C. § 3553(a) ...................................................................... 6, 20

18 U.S.C. § 3553(a)(2) ...................................................................... 20

18 U.S.C. § 3663A ............................................................................ 25

Rules

Section 2B1.1(b)(9)(C) ....................................................................... 10

U.S.S.G. §3B1.2(b) ............................................................................ 18

U.S.S.G. §4C1.1(a)(9) ....................................................................... 13

U.S.S.G. § 1B1.3(a)(1)(A) ................................................................ 11

U.S.S.G. § 2B1.1(b)(2)(A)(i) .............................................................. 9

U.S.S.G. § 3A1.1(b)(1) ...................................................................... 12

U.S.S.G. § 4B1.2(a) ........................................................................... 19

§1B1.3 .................................................................................................. 19

§3A1.1 ................................................................................................. 12

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, hereby submits its sentencing memorandum. On July 9, 2025, the government anticipates that defendant, Christopher K. Kamon ("defendant"), will plead guilty pursuant to a written plea agreement to one count of wire fraud, in violation of 18 U.S.C. § 1343, for his role in embezzling money from the Victim Clients (defined *infra*). To account for the seriousness of defendant's conduct and for the other reasons set forth below, the government recommends that the Court sentence the defendant to a term of 87 months' imprisonment at the high end of the advisory guidelines range, to run concurrently to the 121-month sentence imposed in *United States v. Kamon*, Nos. 2:23 CR 24, 2:23 CR 47-2 (C.D. Cal.). This sentence is sufficient, but not greater than necessary, to satisfy the principles set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a).

## BACKGROUND

Defendant was the head of accounting at Girardi Keese ("GK") between 2004 and 2020 when the firm collapsed. For years, defendant helped Thomas Girardi steal funds from the client trust account to pay the firm's operating expenses, including payroll, and to fund other lavish expenses that lawyers at the firm incurred. While defendant helped Girardi steal from GK's clients, defendant also stole from the firm itself through a false invoicing scheme that he ran. Defendant pled guilty in the Central District of California and admitted to helping Girardi steal approximately $2.3 million from numerous GK clients, in addition to stealing approximately $6.5 for

1

million himself. CDCA PSR ¶ 59. For this conduct, defendant received a term of 121 months' imprisonment, and defendant has appealed that sentence.

This case concerns defendant's facilitating Girardi's theft of settlement for five clients who lost loved ones when, on October 29, 2018, Lion Air Flight 610 crashed in the Java Sea shortly after takeoff from Jakarta, Indonesia, killing all 189 people on board. Girardi, David Lira, and GK Lawyer A represented Victims A through E ("the Victim Clients"), and their family members, in a lawsuit against Boeing that was pending in the U.S. District Court for the Northern District of Illinois before Judge Thomas M. Durkin. Victims A through E lived in Indonesia and had no experience with the American justice or court system and relied on their lawyers to prosecute and settle their lawsuits. Those cases all settled, and Boeing wired settlement monies to GK's client trust account starting in early March 2020. At that time, GK was in dire financial straits. Defendant knew that fact and knew that Girardi had been lying to other GK clients whose settlement money the firm had also misappropriated, as reflected in the email chain below between defendant and Lira on March 4, 2020:

| From: | Chris K. Kamon <ckamon@girardikeese.com> |
|---|---|
| To: | David Lira <dlira@girardikeese.com> |
| Sent: | 3/4/2020 6:22:09 PM |
| Subject: | RE: Lion air money should have been tired today. |

I told him I need money for payroll and just went to lunch and didn't say anything to me.

From: David Lira
Sent: Wednesday, March 04, 2020 4:19 PM
To: Chris K. Kamon
Subject: Re: Lion air money should have been tired today.

Worse then bad. Tom is lying to clients. I am meeting with him as soon as I can.

Sent from my BlackBerry - the most secure mobile device
From: ckamon@girardikeese.com<mailto:ckamon@girardikeese.com>
Sent: March 4, 2020 4:16 PM
To: dlira@girardikeese.com<mailto:dlira@girardikeese.com>
Subject: RE: Lion air money should have been tired today.

Its really bad.

From: David Lira
Sent: Wednesday, March 04, 2020 4:16 PM
To: Chris K. Kamon
Subject: Re: Lion air money should have been tired today.

Yes. A lot of emails from folks and irate calls from clients the whole time.

Sent from my BlackBerry - the most secure mobile device
From: ckamon@girardikeese.com<mailto:ckamon@girardikeese.com>
Sent: March 4, 2020 4:15 PM
To: dlira@girardikeese.com<mailto:dlira@girardikeese.com>
Subject: Re: Lion air money should have been tired today.

Really need to chat when you're ready.

When the Boeing settlements funded, Girardi told defendant to use the Boeing settlement money to pay firm expenses, even though Judge Durkin had entered four separate orders for Victims A, B, C, and D which directed that the settlements were to be promptly distributed to those clients (because those settlements also involved minors). Beginning in March 2020, defendant prepared checks from the GK client trust account payable to GK, which checks falsely reflected that they were for "fees" purportedly owed to GK for the Lion Air cases or which falsely reflected that they were amounts owed to GK in connection with a "miscellaneous case." Defendant knew that GK was not entitled to any of this money and that it belonged to the Victim

3

Clients. Defendant then transferred those funds to other GK clients whose own settlement funds had previously been misappropriated by GK and to fund GK. By this time, defendant knew that Girardi and GK had misappropriated millions of dollars in settlement funds belonging to other clients, as discussed above, that were at issue in the California case.

Moreover, defendant also knew that Girardi and Lira were lying to the Victim Clients to conceal that their settlements funds had been misappropriated. Defendant helped perpetuate those lies. For instance, Girardi made lulling payments to the Victim Clients, paying them some but not all of the money that they were owed while lying to them about the reasons for the delays. Defendant knew that Girardi was lying to the clients and made these lulling payments to the Victim Clients to conceal the fraud. Worse yet, when Boeing wired Victim E's settlement funds into GK's client trust account in June 2020, defendant helped Girardi steal those funds too. Throughout the summer of 2020, defendant continued making lulling payments at Girardi's direction of some—but not nearly all—of the payments to the Victim Clients knowing that Girardi had stolen that money to keep GK afloat. GK's local counsel finally alerted Judge Durkin to the fact that the Victim Clients had not been paid in December 2020, which led to GK's ultimate collapse, as the firm had been exposed for what it was: a Ponzi scheme masquerading as a personal injury law firm. At that point, the Victim Clients were still owed approximately $3 million, and were made whole, not by GK, but by their local counsel in the matter.

## The Advisory Guidelines Range

The government has no objections to the Probation Department's Pre-Plea Investigation Report ("PSR"). The PSR correctly calculated defendant's guidelines range to be 70-87 months' imprisonment based on an adjusted offense level of 26 combined with criminal history category II as detailed below:

| | |
|---|---|
| Base Offense Level (§2B1.1(a)(1)) | 7 |
| Increase Based on Loss (§2B1.1(b)(1)(I)) | 16 |
| Offense Involved More than 10 Victims (§2B1.1(b)(2)(A)(i)) | 2 |
| Offense Involved Violation of a Judicial Order (§2B1.1(b)(9)(C)) | 2 |
| Defendant Knew or Should Have Known that a Victim of the Offense Was a Vulnerable Victim (§3A1.1(b)(1)) | 2 |
| Acceptance of Responsibility (§3E1.1) | -3 |
| Total | 26 |

### The Offense Involved More Than 10 Victims

Section 2B1.1(b)(2)(A)(i) provides for a two-level increase to adjusted offense if "the offense involved 10 or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(i). This enhancement applies here because there were 13 members of Victims A through E's family, including the named victims, who also received funds as part of these settlements. Defendant does not contest the applicability of this enhancement.

### The Offense Involved Violation of a Judicial Order

Section 2B1.1(b)(9)(C) provides for a two-level increase when the offense involved "a violation of any prior, specific judicial . . . order." U.S.S.G. §2B1.1(b)(9)(C),

App. N. 8(C) ("Subsection (b)(9)(C) provides an enhancement if the defendant commits a fraud in contravention of a prior, official judicial or administrative warning, in the form of an order, injunction, decree, or process, to take or not to take a specified action."). Here, Judge Durkin entered orders on February 24, 2020, March 4, 2020, and March 9, 2020 requiring the settlement funds to be sent to Victims A through D "as soon as practicable." That did not happen: defendant helped Girardi steal those funds that Victims A through D never received their full settlement payments from GK.

Defendant argues that there is no evidence that he knew about those orders. Not so. The government anticipates that defendant will acknowledge his understanding that certain of these settlements were subject to court orders in his plea agreement: "Each of Girardi, Lira, and GK Lawyer A, and defendant knew that [the settlement funds] had been wired into the Client Trust Account at or about the time those wires were received by GK and that, according to courts order issued in each of those cases, those funds were required to be promptly distributed to those clients." Plea Agreement, at 3. Defendant also received memoranda from GK Lawyer A advising that the settlements at issue were subject to a court order and provided detailed instructions as to how the settlement funds were to be distributed:

Dear Tom:

We should be receiving the settlement funds by wire today on the first Boeing case, █████ v. Boeing.

Total Gross Settlement: $2,500,000

Per the release and Court order, the funds are to be disbursed as follows:

$395,000 to California Attorney Lending (directly from Boeing)

$2,105,000 to Girardi Keese Trust at Torrey Pines

Defendant received two similar memos and knew that those settlements were subject to a court order.

Defendant also ignores that this enhancement is tied to the offense, and that he is liable for acts of his co-schemers under relevant conduct principles. Relevant conduct includes (1) acts and omissions done or willfully caused by the defendant in connection with the offense of conviction (U.S.S.G. § 1B1.3(a)(1)(A); and (2) acts or omissions done by others in connection with the offense of conviction as part of "jointly undertaken criminal activity." *Id.* § 1B1.3(a)(1)(B). Jointly undertaken criminal activity includes that which is reasonably foreseeable by the defendant in connection with that criminal activity. *Id.* § 1B1.3(a)(1)(B)(i), (ii), (iii). Foreseeability does not equate to actual knowledge. *See United States v. Hernandez*, 325 F.3d 811, 817 (7th Cir. 2003) ("A defendant need not know of a co-conspirator's actions for those actions reasonably to be foreseeable to the defendant."); *United States v. Senn*, 129 F.3d 886, 898 (7th Cir. 1997) (because the defendant knew of other participants and played a

critical role in success of a telemarketing scam, he was responsible for all money obtained by his telemarketing co-schemers).

Girardi, Lira, and GK Lawyer A undoubtedly were aware of Judge Durkin's orders and willfully violated them. Even if defendant did not know every particular of those orders, it was reasonably foreseeable that Girardi's theft of those settlement funds would violate a court order requiring payment. This enhancement thus applies as defendant knew that Girardi, Lira, and GK Lawyer A violated Judge Durkin's settlement orders and the scheme itself involved violation of those orders.

### Defendant Knew or Should Have Known that a Victim of the Offense Was a Vulnerable Victim

The two-level enhancement under §3A1.1(b)(1) applies because defendant knew or should have known that a victim of the offense was a vulnerable victim. *See* U.S.S.G. § 3A1.1(b)(1). Application Note 2 to §3A1.1 further provides that a vulnerable victim includes those who are unusually vulnerable "due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." *Id*. App. N. 2. The government need only establish by a preponderance of the evidence that a single victim was vulnerable, and no other factor "need accompany age so long as the victim's vulnerability is related to the victim's age." *United States v. Sims*, 329 F.3d 937, 944 (7th Cir. 2003); *United States v. White*, 737 F.3d 1121, 1142 (7th Cir. 2013); *see also United States v. Julian*, 427 F.3d 471, 489 (7th Cir. 2005) (enhancement warranted based on children's economic vulnerability). This

enhancement also negates a two-level reduction for zero-point offender relief in §4C1.1. *See* U.S.S.G. §4C1.1(a)(9).

Here, certain of the victims were minors and their settlements required court approval. All the victims were also non-English speakers residing thousands of miles away in Indonesia who were unfamiliar with the American legal system. *Cf. United States v. Rumsavich*, 313 F.3d 407, 413 (7th Cir. 2002) (investment fraud scheme targeting elderly investors who "had a lower than average ability to protect themselves" warranted enhancement); *United States v. Johns*, 686 F.3d 438, 460 (7th Cir. 2012) (financial desperation can make a victim vulnerable for purposes of this enhancement); *United States v. Parolin*, 239 F.3d 922, 926-27 (7th Cir. 2001) (enhancement warranted where victim was financially unsophisticated, spoke and wrote limited English, and had just lost her husband).

Defendant argues that he did not interact with and know the Victim Clients and thus was not aware of any vulnerability. Again, not so. Defendant was on numerous emails where the Victim Clients were asking why GK had not paid their settlements:



From:
To:                 'Chris K. Kamon (ckamon@girardikeese.com)'
CC:                 David Lira
Sent:               3/31/2020 10:06:38 AM
Subject:            FW: Lion air -

Chris, this is ████ –
FYI

From: ████████, 2020 12:30 AM
Sent: March 31, 2020 12:30 AM
To:
Subject: Lion air -

It's been almost a week since you promised me that you'd give me the information I wanted.
Up till now, I have not received any information from you.

I hope that the execution of the agreement that I have signed can be carried out immediately because it has
past the agreed time.

I hope it's not affected by the corona outbreak, because-once again-I think the execution of this case can be
carried out online.

I hope you would convey any information that you have to me.

Regards,

--
Regards, ^·

In the example above, Defendant knew that Boeing had already funded the settlement for this victim—Victim A—by the time of this email. Nonetheless, defendant sent Victim A $40,000 at Girardi's behest under the auspices of the payment being a "loan." This was Victim A's money and Victim A should have received the entirety of the settlement funds, but instead defendant sent $40,000 letting Victim A believe it was a loan:

10

**From:** ▮▮▮▮▮▮▮▮
**To:**    Chris K. Kamon
**CC:**    David Lira; ▮▮▮▮▮▮
**Sent:**  4/3/2020 5:01:45 PM
**Subject:** Re: ▮▮▮▮▮

Thank you

Sent from IPhone

On Apr 3, 2020, at 2:59 PM, Chris K. Kamon <ckamon@girardikeese.com> wrote:

Tom just gave the ok to advance the $40,000.00. It's too late to process today, so I will process this wire first thing Monday.

**From:** ▮▮▮▮▮▮▮▮
**Sent:** Thursday, April 02, 2020 7:41 PM
**To** ▮▮▮▮▮▮ David Lira
**Cc:** Chris K. Kamon
**Subject:** Re: ▮▮ case lion Air

Hello All,

▮▮▮ wrote me on WhatsApp with a list of things she has ordered for her meat company, including a picture of a freezer or something LOL - My recommendation, if ▮▮▮ s funded, get an okay and send her the money. If you don't have the money, advance her the 40, the repayment is solid. At present, she owes GK $10,000.

Stay safe.

▮▮▮▮▮

**From:** ▮▮▮▮▮▮▮▮
**Date:** Thursday, April 2, 2020 at 7:29 PM
**To:** ▮▮▮▮▮▮▮▮▮▮ David Lira
<dlira@girardikeese.com>,
**Subject:** Re ▮▮▮ case lion Air

Dear Mr David and Mr Lira

Mr. David and Mr. Keith, can you lend me 40,000 dollars? I really need it right away. I have a business, if waiting for liquid boeing money there is still no certainty.

Thank you very much.

Defendant also knew that Girardi and Lira were lying to the Victim Clients about the delay in the payments. And defendant helped Girardi made lulling payments to the Victim Clients to conceal the theft:

11



Defendant was also on emails (like the example below) where the Victim Clients pleaded with their lawyers for answers about why they had not received their settlement payments:



Dearest Mr.Tom Girardi and all GK staffs,

Hope all of you are safe and healthy. We want updhate information about the funds transferred and why until now we didnt received confirm about that.

With respect, we hope Mr. Tom Girardi please reply to our email and be willing to transfer funds in accordance with the financial letters that GK staffs has sent to us.

As like David said that The wire funds Will Endeavor By early may And now in the second week of may, we hope the funds can transfer no later than may 15th as like mail from David.

We really need that funds in this covid-19 situation and we don't like the transfered to be delayed too long until the covid-19 to be over.

Stay safe and please reply our mail.thankyou.

Regards,
All GK clients

In an attempt deflect these questions, at Girardi's behest, defendant wired Victims A, B, C, and D only half of their settlement money in May 2020. Victims A, B, C, and D continued asking questions after receiving only half of their settlement funds. Girardi kept lying to them, and defendant knew it. Girardi sent false letters to the Victims A, B, and C lying to them to conceal that Girardi had stolen settlement funds from them (with defendant's help) considering the Victim Clients' repeated questions about their settlements and demands for payments. An example of one of Girardi's false letters (which defendant received shortly after it was sent) is below:



In sum, the correspondence reveals that the Victims relied on Girardi, Lira, and GK Lawyer A because they were unfamiliar with the American legal system, and these lawyers exploited that trust. Defendant also knew and helped Girardi steal

their settlement monies. Defendant was personally aware of the Victim Clients' vulnerability and is also liable under principles of relevant as discussed *supra*. The PSR correctly concluded that this enhancement applies.

### The Minor Participant Reduction Does Not Apply

Section 3B1.2 provides for a two-level reduction in the adjusted offense level if the defendant "was a minor participant in any criminal activity." U.S.S.G. §3B1.2(b). Two factors that the Court should consider here is "the degree to which the defendant understood the scope and structure of the criminal activity" and "the degree to which the defendant stood to benefit from the criminal activity." *Id*. App. N. 3(C)(i), (v). A defendant must be substantially less culpable than other participants in a fraud scheme to merit this offense level reduction. *See United States v. Wang*, 707 F.3d 911, 917 (7th Cir. 2013); *United States v. Watts*, 535 F.3d 650, 659 (7th Cir. 2008). A defendant bears the burden to prove the applicability of this reduction by a preponderance of the evidence. *United States v. Lopez*, 545 F.3d 515, 516 (7th Cir. 2008).

Defendant argues that he qualifies for this reduction because he was only following Girardi's orders—but he has not met his burden. Defendant understates his role in the scheme. For years, he helped Girardi steal client money knowing exactly what Girardi was doing. Defendant had access to the various bank accounts at GK, and understood that Girardi stole client money to keep the firm afloat and to help GK maintain the outward façade of legitimacy, power, and wealth. Girardi needed

defendant to help move these funds. Courts have held that this type of conduct precludes a two-level minor participant reduction. *See United States v. Jarrett*, 133 F.3d 519, 535 (7th Cir. 1998) (bookkeeper and primary money launder denied reduction); *accord United States v. Green*, 114 F.3d 613, 619 (7th Cir. 1997). Defendant was willing to help because he too was stealing money from GK. It behooved defendant to make sure that GK stayed in business. Contrary to defendant's argument, he did have a propriety interest in fueling Girardi's fraud scheme because that scheme fueled defendant's own theft from GK. These facts belie defendant's argument, and he should not receive a two-level reduction here.

### Defendant Is in Criminal History Category II

The PSR correctly found that defendant has three criminal history points because of his California cases, placing him in criminal history category II. Section 4B1.2(a) defines a prior sentence as "any sentence previously imposed upon adjudication of guilt." U.S.S.G. § 4B1.2(a). Application Note 1 further provides guidance:

> 'Prior sentence' means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. See §4A1.2(a). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct under the provisions of §1B1.3 (Relevant Conduct).

*Id*. App. N. 1.

The present case and the California cases charged separate schemes involving different victims. As for the theft from GK clients, the California case involved matters pending in California courts where defendant helped Girardi steal client funds. Defendant's own embezzlement case in California dealt with his theft from GK. Here, the thefts only concern Victims A through E, who were not charged as part of the California case and were not included as relevant conduct as part of defendant's sentencing there. Indeed, defendant did not receive an enhancement under §2B1.1 in the California case for the theft from the Victim Clients, and he is not receiving an enhancement here for the actual losses in the California case. The PSR correctly found that defendant has three criminal history points and is in criminal history category II.

### The Factors Set Forth in 18 U.S.C. § 3553(a)

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[1] In order to determine the sentence to impose, the Court must consider the statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Sentencing Commission's policy statements. Although

---

[1] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). For the reasons set forth below, consideration of the § 3553(a) factors reflects that a top of the guidelines sentence of 87 months' imprisonment is warranted and necessary.

<u>The Nature and Circumstances of the Offense</u>

Defendant helped Girardi run his law firm as a Ponzi scheme. Girardi could not have done it without defendant, and defendant knew better. There were also real victims here: Victims A, B, C, D, E, and their families lost millions of dollars that rightfully belonged to them. Those victims were also in a terrible point in their lives when they sought representation from GK, having suddenly lost their loved ones in an airplane crash. GK exploited their vulnerability, and defendant was a central player in this scheme to defraud them.

By March 2020, defendant knew that GK was in financial trouble. Defendant had trouble paying bills for the firm. Defendant knew by this time that Girardi had been stealing from clients for years. Defendant also knew that Girardi had been lying to clients and falsely making up excuses for delays in settlement payments. Defendant himself had also stolen millions of dollars from GK by this point of time. The firm was a den of thieves and defendant exploited the lack of control within the firm to steal money for himself and to help the firm steal millions of dollars from clients. Defendant did this to fuel a lifestyle that he could not otherwise afford.

Defendant did not care that the purpose of the firm was to represent individuals who had been injured or lost loved ones in catastrophic disasters. Defendant did what Girardi told him to do: steal money from the client trust account to pay firm expenses, including payroll and exorbitant credit card bills that lawyers at the firm ran up on extravagant expenses unnecessary to the mission of their work. In March 2020, when Boeing started funding settlements for the Victim Clients, defendant knew what would happen next. But he did not care. Instead, defendant did what he had done for years: he helped Girardi steal settlement money from clients.

The Victims here lived thousands of miles away and relied on GK to represent them. Instead, Girardi lied to the Victim Clients about why they had not received their settlement money to conceal the fact that Girardi had stolen it. Lira lied to the Victim Clients too to cover for Girardi's thefts. GK Lawyer A knew that Girardi and Lira lied to the Victims Client, but he too did nothing. Defendant also knew that lawyers at GK were lying to the Victims Clients about the settlement delays to hide the fact that Girardi had stolen the money.

This string of thefts and lies went on for almost a year. Girardi kept stealing money from the Victim Clients with defendant's help. Defendant did nothing to stop it, and he was self-interested in making sure that GK survived. GK was a cash cow for defendant. Defendant wanted to make sure that the firm stayed afloat. Defendant did not care about the Victim Clients. All that defendant, Girardi, and other lawyers at GK cared about was keeping up the charade that GK was a legitimate law firm. It

was not, and defendant knew that fact and perpetuated the lie by helping Girardi steal from the Victim Clients. The nature and circumstances of this offense are egregious and warrant a top of the guidelines sentence.

<u>History and Characteristics of Defendant</u>

Defendant is 51 years old. He had a good childhood and was raised by loving and hardworking parents. He went to college and received a bachelor's degree in mathematics and worked as an accountant. Despite having many advantages, defendant began brazenly stealing from GK and its clients. Defendant knew better than what he did here and was given opportunities that most who find themselves in the criminal justice system lacked growing up. Defendant stole more than $6 million for himself and spent it not to help, but prodigiously on himself for lavish personal expenses. When he learned about the government's investigation, defendant attempted to flee and was arrested when he re-entered the country. Defendant has expressed remorse for what he has done, but that does not excuse his criminal conduct. In sum, defendant's history and characteristics, while mitigating, do not outweigh the need for a significant sentence here.

<u>The Need to Promote Respect for the Law,
Provide Just Punishment, and Afford Adequate Deterrence</u>

The government's recommended sentence would promote respect for the law, provide just punishment, and afford adequate deterrence. A custodial sentence here

would promote respect for the law by showing that those like the defendant who commit fraud are not above the law.

Moreover, client embezzlement cases like these where lawyers at a law firm knowingly lie and steal from clients are serious. While not a lawyer, defendant was a professional—an accountant—who helped this fraud succeed. The public needs to know that there will be serious consequences when lawyers, and professionals at law firms like defendant, commit crimes by stealing from clients. In addition, intertwined with promoting respect for the rule of law—and equally important—is the concept of general deterrence. *See United States v. Arroyo*, 75 F. 4th 705, 709 (7th Cir. 2023) ("General deterrence is, after all, an economic theory of punishment: 'Where the profits to be made from violating the law are higher, the penalty needs to be correspondingly higher to achieve the same amount of deterrence.'" (quoting *United States v. Cavera*, 550 F.3d 180, 196 (2d Cir. 2008) (en banc)); *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (stating that "white-collar criminals . . . are . . . prime candidates for general deterrence"); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("[C]onsiderations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). General deterrence in a case like this is important and warrants a sentence of 87 months' imprisonment.

Finally, specific deterrence also weighs in favor of a guidelines sentence at the high end of the advisory range. It is unlikely that the defendant will commit this crime again in the future. Still, specific deterrence is important. A guidelines sentence still can serve an important message to defendant that actions have consequences.

## Restitution

Restitution is mandatory in this case, *see* 18 U.S.C. § 3663A, and defendant owes approximately $3,069,500 in restitution.

## Supervised Release

Consistent with the Seventh Circuit's guidance in *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), the government recommends the imposition of a term of supervised release of three years. To promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in defendant's rehabilitation and reintegration into society, the government supports that the Probation Department's recommendation of conditions as detailed in the PSR.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a sentence of imprisonment of 87 months' imprisonment. Such a sentence is well supported under Section 3553(a), as it will reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, properly account for the defendant's history and characteristics, and provide a fair and uniform sentence.

Dated: July 2, 2025

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:     */s/ Jared Hasten*
JARED HASTEN
EMILY VERMYLEN
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300