

FILED

7/14/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
#### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 23 CR 54 |
| v. | |
| CHRISTOPHER K. KAMON | Judge Mary M. Rowland |

### PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ANDREW S. BOUTROS, and defendant CHRISTOPHER K. KAMON, and his attorney, MICHAEL SEVERO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2 (Counts One through Eight) and contempt of court, in violation of Title 18, United States Code, Sections 401(3) and 2 (Counts Nine through Twelve).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the superseding indictment: Count Three, which charges defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count Three of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning in or about 2019, and continuing until in or about December 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly devised, intended to devise, and participated in a scheme to defraud Victims A through E and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

More specifically, defendant was the head of accounting for a law firm called Girardi Keese ("GK"). GK maintained a client trust account at Torrey Pines Bank ("the Client Trust Account"), which was to be used to receive and distribute clients' settlement funds. THOMAS GIRARDI and DAVID LIRA were signatories on the Client Trust Account. As signatories, GIRARDI and LIRA were authorized to sign checks and to obtain all relevant information concerning that account, including

2

transaction activity and balances. Defendant was authorized to initiate wire transfers from the Client Trust Account, and defendant had online access to all information regarding that account.

On October 29, 2018, Lion Air Flight 610 crashed in the Java Sea shortly after takeoff from Jakarta, Indonesia, killing all 189 people on board. The aircraft was manufactured by Boeing. Victims A through E are relatives of passengers who died in the Lion Air crash. GIRARDI, LIRA, and GK Lawyer A subsequently represented Victims A through E and their families ("the Lion Air Victims"), including by causing lawsuits to be filed against Boeing in the Northern District of Illinois. Each of the Lion Air Victims eventually agreed to settle their cases with Boeing.

Between March 4 and March 30, 2020, Boeing wired the settlement funds for Victims A through D into GK's Client Trust Account. From those wires, GK was required to distribute an aggregate total of approximately $7.5 million to Victims A through D and their family members. Each of GIRARDI, LIRA, GK Lawyer A, and defendant knew that those funds had been wired into the Client Trust Account at or about the time those wires were received by GK and that, according to court orders issued in each of those cases, those funds were required to be promptly distributed to those clients. Additionally, each of GIRARDI, LIRA, GK Lawyer A, and defendant knew that GK was not entitled to keep any of those funds as attorneys' fees. Specifically, as they knew, all attorneys' fees to which GK was entitled from the Lion

3

Air cases had been separately wired by Boeing directly to one of GK's lenders in partial payment of a loan to GK.

Beginning in March 2020, at GIRARDI's direction, and with LIRA's knowledge and assistance, defendant caused millions of dollars of the Lion Air Victims' settlement funds to be misappropriated from the Client Trust Account. Among other things, defendant prepared checks from that account payable to GK, which checks falsely reflected that they were for "fees" purportedly owed to GK for the Lion Air cases or which falsely reflected that they were amounts owed to GK in connection with a "miscellaneous case." GIRARDI and/or LIRA signed certain of those checks. At the time those checks were issued, GIRARDI, LIRA, and defendant knew that those funds were not actually owed to GK and were instead being misappropriated from the Lion Air Victims.

Additionally, at GIRARDI's direction and with LIRA's knowledge and assistance, defendant knowingly caused the Lion Air Victims' settlement funds to be distributed by check to other GK clients whose own settlement funds previously had been misappropriated by GK. GIRARDI and/or LIRA signed certain of those checks. More specifically, prior to March 2020, defendant knew that GIRARDI and GK had already misappropriated millions of dollars in settlement funds belonging to other clients. Defendant also spoke with LIRA about the misappropriation of other clients' settlement funds prior to March 2020. On more than one occasion, LIRA stated in defendant's presence that GK needed to find money to replenish the client funds that

4

had already been misappropriated in order to "keep Girardi out of jail." Additionally, on March 4, 2020, LIRA stated in an email to defendant that "Tom is lying to clients." Defendant understood LIRA to be referring to the fact that GIRARDI was providing false excuses to clients about why they had not received their settlement funds and that GK was concealing from clients that their settlement funds had been and were being misappropriated.

As defendant knew, GIRARDI and LIRA similarly lied to the Lion Air Victims to conceal that their settlement funds had been and were being misappropriated. For example, in April 2020, defendant received emails that LIRA sent to certain of the Lion Air Victims in which LIRA used the COVID-19 pandemic as a false excuse for the failure to distribute the settlement funds to those clients. In fact, as LIRA, GIRARDI, and defendant knew, GK remained able to process financial transactions into and out of the Client Trust Account during the pandemic and the only reason the settlement funds were not being distributed to the Lion Air Victims was because those funds were being misappropriated.

Additionally, in April 2020, Victim B—not knowing that GK had received her settlement funds—requested a $40,000 "loan" from GK. Defendant, at GIRARDI's direction and with LIRA's and GK Lawyer A's knowledge, wired $40,000 to Victim B, which they falsely described as an "advance."

On or about May 11, 2020, after repeated demands by Victims A through D to be paid their settlement funds, GIRARDI approved the delinquent distribution to

5

those clients of approximately one-half of those funds. After those partial distributions were made, GIRARDI sent letters to certain of those clients providing false explanations for why only a portion of their funds were distributed. LIRA and defendant each received copies of those false letters. In one of them, GIRARDI falsely stated:

> We made an agreement with Boeing that all of the cases
> would be resolved. They gave us special authorization to
> distribute 50%.

In another letter, Girardi falsely stated:

> I got enough of the problem taken care of so we were able
> to release 50% of the settlement.

As GIRARDI, LIRA and defendant knew, those letters were false because no such agreement existed with Boeing; no "special authorization" was required and no other "problem" prevented GK from distributing all the settlement funds to Victims A through D; and the reason the funds were not being distributed to Victims A through D was because they were being misappropriated.

In June 2020, Boeing wired into the Client Trust Account more than $1 million in settlement funds for Victim E and his family members. As defendant knew, GIRARDI and GK subsequently misappropriated those funds and did not distribute any portion to Victim E or his family members.

In July and September 2020, GIRARDI approved additional delinquent partial distributions to Victims A through D, while continuing to misappropriate the remainder of their money.

6

Consequently, as a result of GIRARDI, LIRA, and defendant's scheme, the Lion Air Victims suffered losses of over $3 million.

On or about April 22, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email from LIRA, using the email address "dlira@girardikeese.com," to Victims A through D, falsely stating that their settlement payments were delayed because of the pandemic, including that "[w]e are still under the government mandate to stay at home."

7.      The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

7

     b.    Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

     c.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.    Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.    For purposes of calculating the Sentencing Guidelines, the government's position as of the date of this Agreement is as follows:

8

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 1, 2024 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. The offense level is increased by 16 levels, pursuant to Guideline § 2B1.1(b)(1)(I), because the loss was more than $1,500,000 and less than $3,500,000.

iii. The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(2)(A)(i), because the offense involved 10 or more victims.

iv. The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(9)(C), because the offense involved the violation of a judicial order.

v. The offense level is increased by 2 levels, pursuant to Guideline § 3A1.1(b)(1), because the defendant knew or should have known that a victim of the offense was a vulnerable victim.

vi. The government understands that defendant will truthfully admit the conduct comprising the offense of conviction, and truthfully

9

admit or not falsely deny any additional relevant conduct for which the defendant is accountable under Guideline § 1B1.3. Therefore, based upon facts now known to the government, defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant has 3 criminal history points, which is equivalent to criminal history category is II, as follows.

10

i.      On or about April 11, 2025, defendant was convicted in the United States District Court for the Central District of California of wire fraud in each of *United States v. Kamon*, No. 2:23CR24 (C.D. Cal.) and *United States v. Kamon*, No. 2:23CR47 (C.D. Cal.), and sentenced to a two terms of imprisonment of 121 months each, to run concurrently to one another. Pursuant to Guideline § 4A1.1(a), defendant receives 3 criminal history points.

d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government anticipates the offense level to be 26 which, when combined with the anticipated criminal history category of II, results in an anticipated advisory sentencing guidelines range of 70 to 87 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.      Defendant and his attorney and the government acknowledge that the guidelines calculations set forth in this Agreement are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands the above calculations are based on information now known to the government and that further review of the facts or applicable legal principles may lead the government to change its position on the guidelines calculations. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

11

Accordingly, the validity of this Agreement is not contingent upon the defendant's, the probation officer's, or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of a change in the government's position on the guideline calculations or the Court's rejection of these calculations.

11.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by the government prior to sentencing. The government may correct these errors by a statement to the Probation Office or the Court, setting forth any changes in the government's position regarding the guidelines calculations. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea on the basis of such corrections.

## Agreements Relating to Sentencing

12.    Each party is free to recommend whatever sentence it deems appropriate; provided, however, the government agrees to recommend that the Court order defendant's sentence to run concurrent with his sentence in *United States v. Kamon*, No. 2:23CR24 (C.D. Cal.) and in *United States v. Kamon*, No. 2:23CR47 (C.D. Cal.).

13.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum

penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the victims is $3,069,500, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

15.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event of the death or dissolution of, or the government's inability to locate the named

13

recipient(s) of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

18.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment as to defendant and the forfeiture allegation.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 23 CR 54.

20.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

21.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment

15

separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code,

Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

22.     Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

17

23.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall endeavor to ensure that the relevant facts and sentencing factors, as applied to the facts, are brought to the District Court's attention fully and accurately, including facts related to the defendant's criminal conduct and related conduct, and any relevant information concerning the defendant's background, character, and conduct that the District Court may consider under 18 U.S.C. § 3661 in imposing a sentence.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the

disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

28.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

29.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any

19

term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

31.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

32.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he

20

understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: $7/14/2025$

Signed by Jason Yonan on behalf of
ANDREW S. BOUTROS
United States Attorney

CHRISTOPHER K. KAMON
Defendant

JARED HASTEN
EMILY VERMYLEN
Assistant U.S. Attorney

MICHAEL SEVERO
Attorney for Defendant

21